UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| ERIC MCBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | |
| REGIONS BANK, | ) | |
| EQUIFAX INFORMATION | ) | _____ |
| SERVICES, LLC; EQUIFAX | ) | |
| MORTGAGE SOLUTIONS, | ) | |
| AND | ) | |
| TRANSUNION LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW the plaintiff, Eric McBride ("Plaintiff"), by and through his undersigned counsel, and for his complaint alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. (Fair Credit Reporting Act).

2. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit

scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011).

    3.    Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

    4.    Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

Accordingly, "[t]he FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. As a consumer reporting agency Defendants Equifax Information Services, LLC ("Equifax") and TransUnion LLC ("Trans Union") are required by the FCRA to reinvestigate the accuracy of "any item of information" that is disputed by a consumer. 15 U.S.C. § 1681i(a)(1)(A).

6. The grave responsibility imposed by § 168li(a) must consist of something more than merely parroting information received from other sources. *Cushman*, at 225.

7. Further, CRAs "must exercise reasonable diligence in examining the court file to determine whether" the information disputed by the consumer is inaccurate. *See Dennis v. BEH 1* 520 F.3d 1066, 1071 (9th Cir. 2008) (reversing summary judgment on behalf of a consumer reporting agency and *sua sponte* entered summary judgment in favor of Plaintiff). The *Dennis* case "illustrates how important it is for [CRAs] …to train its employees to understand the legal significance of the documents they rely on." *Id*.

8. As a part of any reinvestigation, the nationwide CRAs must notify the source of the disputed information about the dispute and provide the source with all

3

relevant information provided by the consumer with the dispute.  15 U.S.C. § 1681i(a)(2)(A).

9. "With FACTA, Congress amended [the] FCRA to exempt resellers from the reinvestigation obligations of CRAs and to provide for reinvestigation obligations specific to resellers, but it did not otherwise exempt resellers from a CRA's obligations under the Act." *Poore v. Sterling* Testing Sys. Inc., 410 F.Supp. 2d 557, 567 (E.D. Ky. 2006).  In other words, CRAs that are resellers must comply with § 1681e(b) and assure the maximum possible accuracy of each consumer report it prepares and sells to third parties.

10. Likewise, the FCRA imposes duties on persons who furnish information to a consumer reporting agency ("furnisher").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).  Specifically, the furnisher must satisfy five duties after receipt of notice of a consumer dispute from a consumer reporting agency.  15 U.S.C. § 1681s-2(b)(1)(A-E).

11. Despite these requirements, the defendants routinely fail to comply with the FCRA.

12. Despite these requirements, hundreds of lawsuits, government enforcement actions, and billions in revenue every year, the nationwide CRA Defendants routinely fail to comply with the FCRA.

13. The sale of consumers' most private and sensitive personal financial information is a multi-billion-dollar industry for the CRAs.

14. Equifax reported more than $2.66 billion in operating revenue in its annual report for year ending in 2015.[1]

15. EMS reported $124 million in revenue for year 2015.[2]

16. Trans Union reported over $1.5 billion in revenue for year ending 2015.[3]

17. Regions Bank reported over $1 billion in revenue for year ending 2015.[4]

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

---

[1] http://files.shareholder.com/downloads/ABEA-32806R/1801692852x0x882810/CC30F45C-8BF7-4814-8A29-A7CE1D85EDCA/15-1002_2015_Annual_Report_Interactive_PDF_FINAL_032116.pdf Last visited March 31, 2016.

[2] https://www.thestreet.com/story/13457930/6/equifax-efx-earnings-report-q4-2015-conference-call-transcript.html last visited June 21, 2016.

[3] http://d1lge852tjjqow.cloudfront.net/CIK-0001552033/ca89f336-4b0d-4e0f-b841-cc0d09c40d45.pdf?noexit=true Last visited March 31, 2016.

[4] http://www.corporatereport.com/Regions2015AnnualReview/financials/ Last visited June 15, 2016.

20. Plaintiff Eric McBride ("Plaintiff") is an adult individual residing at 6227 Crest Green Road, Birmingham, Alabama 35212. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

21. Defendant Equifax is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

22. Defendant EMS is a business entity that regularly conducts business in this district and which has a principal place of business located at 6 Clementon Road E, Gibbsboro, New Jersey 08026. EMS is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

23. Defendant Trans Union is a Delaware corporation with its principal place of business in the state of Illinois. Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of

furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

24. Defendant Regions Bank is a person who furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2[5], and conducts substantial and regular business activities in this judicial district.

25. Defendants Equifax, EMS, and Trans Union are collectively referred to throughout the Complaint as the "CRA Defendants."

26. Defendants Equifax and Trans Union are collectively referred to throughout the Complaint as the "Nationwide CRA Defendants."

## FACTUAL ALLEGATIONS

27. The CRA Defendants have been reporting derogatory and inaccurate statements relating to Plaintiff and Plaintiff's credit history to third parties (the "inaccurate information").

28. The inaccurate information includes, but is not limited to accounts included in bankruptcy, but reported incorrectly by the CRA Defendants. This includes account information reported by Regions Bank.

---

[5] Plaintiff is making a claim against Regions under § 1681s-2(b). Plaintiff is not making a claim against Regions under § 1681s-2(a).

29. The inaccurate information negatively reflects on Plaintiff, his credit repayment history, financial responsibility as a debtor, outstanding credit obligations and his credit worthiness.

30. In addition, Trans Union reported inaccurate personal identifying information concerning Plaintiff, including but not limited to name, suffix and date of birth. For example, Trans Union reported a year of birth more than twenty (20) years before Plaintiff was born. Trans Union also reported an incorrect middle name and reported Plaintiff with the suffix "Sr." Plaintiff is not a senior. Trans Union also reported false phone numbers for Plaintiff.

31. "Mixed files" create a false description of a consumer's credit history.

32. A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file. More specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991)[6].

33. More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[7]

---

[6] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[7] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited March 31, 2016. *See also* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

34. The CRA Defendants were aware of the government enforcement actions in the preceding paragraphs prior to receipt of a dispute from Plaintiff.

35. Plaintiff's Trans Union file is a "mixed file."

36. The CRA Defendants know about the incidence of "mixed files" as defined above.

37. The CRA Defendants have been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer reports that the CRA Defendants have disseminated to various persons and credit grantors.

38. Equifax reported false information about Plaintiff to third parties. Plaintiff disputed false information to Equifax. Equifax continued to report false information about Plaintiff. Plaintiff requested Equifax to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute. On at least one occasion, Equifax failed to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute. Plaintiff requested Plaintiff's file from Equifax. On at least two occasions, Equifax failed to provide Plaintiff with Plaintiff's file. Plaintiff requested Plaintiff's file from Equifax due to fraud. On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file due to fraud. On at least one occasion, Equifax represented to Plaintiff that a disputed Regions account was no longer being reported by Equifax. This was untrue because Equifax did not delete or suppress, or both, a disputed Regions account in Plaintiff's Equifax file. Equifax also updated a

9

disputed Regions account to show that Plaintiff reaffirmed the debt.  This is untrue because Plaintiff did not reaffirm Regions account ending in 9216.

39.  Pursuant to the FCRA, EMS must maintain reasonable procedures which assure that the consumer reports it sells meet the standard of "maximum possible accuracy."  15 U.S.C. § 1681e(b).  EMS prepared a consumer report pertaining to Plaintiff and provided the same to known and unknown third parties, in connection with Plaintiff's application for credit.  For example, EMS prepared a consumer report pertaining to Plaintiff for First Liberty Financial on or about November 23, 2015.  The consumer report prepared by EMS included the inaccurate information described above.  Yet, prior to the sale of Plaintiff's consumer report, EMS took no action to assure the accuracy of the information it reported to third parties.

40.  Trans Union reported false information about Plaintiff to third parties. Plaintiff disputed false information to Trans Union.  Trans Union continued to report false information about Plaintiff.  Plaintiff requested Trans Union to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute.  On at least two occasions, Trans Union failed to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute.  Plaintiff requested Plaintiff's file from Trans Union.  On at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file.  Plaintiff requested Plaintiff's file from Trans Union due to fraud.  On

at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file due to fraud.

41. Plaintiff notified Equifax and Trans Union that their reporting of Regions' account information was inaccurate.

42. Equifax and Trans Union notified Regions of Plaintiff's disputes.

43. Regions received notice from Equifax and Trans Union of Plaintiff's disputes.

44. Prior to receipt of notice of Plaintiff's disputes from a CRA, Regions knew:

   a. Plaintiff filed a Chapter 7 bankruptcy petition in or around April 2013;

   b. Plaintiff's bankruptcy included accounts with Regions;

   c. Plaintiff's bankruptcy petition was discharged in or around August 2013;

   d. One of Plaintiff's Regions accounts was included in the bankruptcy;

   e. One of Plaintiff's Regions accounts was reaffirmed before the bankruptcy was discharged; and

   f. Plaintiff did not rescind the reaffirmation agreement.

45. Notwithstanding, Regions notified Trans Union and Equifax that it verified the account information.

46. Regions did not conduct an investigation with respect to the disputed information.

47. For example, Regions did not contact Plaintiff concerning the accuracy of the information it reported concerning Plaintiff.

48. Regions did not contact third parties, such as the bankruptcy court or its own bankruptcy lawyers, concerning the accuracy of the disputed information.

49. Regions did not review all relevant information provided by Equifax or Trans Union, or both.

50. Regions did not review any underlying account documents, including documents shared with its counsel concerning Plaintiff's bankruptcy.

51. Regions did not review any bankruptcy records as a part of its investigation of the disputed information, including the bankruptcy petition, discharge order and reaffirmation agreement.

52. Regions did not notify the CRAs to add the "XB" comment code or otherwise mark Plaintiff's accounts as "in dispute".

53. Defendants' conduct proximately caused Plaintiff's injuries, including but not limited to: harm to credit reputation; reduced credit score; denial of credit; lost credit opportunities; emotional distress, including embarrassment and humiliation; interference with normal and usual activities and out-of-pocket expenses.

54. At all times relevant hereto, the defendants acted through their agents, servants, vendors, and/or employees who were acting within the scope of their employment or agency, or both, and under the direct supervision of Defendants.

55. At all times relevant hereto, Defendants' conduct was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the Plaintiff's rights.

## COUNT ONE – VIOLATIONS OF THE FCRA
## (EQUIFAX)

56. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

57. Equifax is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act, pursuant to 15 U.S.C. §§1681n and o.

58. At all times relevant hereto, Equifax's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

59. Equifax is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

## COUNT TWO – VIOLATIONS OF THE FCRA
## (EMS)

60. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

61. EMS is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act, pursuant to §§ 1681n and o.

62. At all times relevant hereto, EMS's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

63. EMS is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

## COUNT THREE – VIOLATIONS OF THE FCRA
## (TRANS UNION)

64. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

65. Trans Union is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act, pursuant to §§ 1681n and o.

66. At all times relevant hereto, Trans Union's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

67. Trans Union is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

## COUNT FOUR – VIOLATIONS OF THE FCRA
## (REGIONS BANK)

68. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

69. Regions is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act, pursuant to §§ 1681n and o.

70. At all times relevant hereto, Region's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

71. Region's is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

## JURY DEMAND

72. Plaintiff demands trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiff seeks judgment against Defendants, as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;

2. Statutory and punitive damages to be determined by the jury;

3. Attorneys' fees; and

4. Costs and expenses incurred in the action.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Statutory and punitive damages to be determined by the jury;

3. Attorneys' fees; and

4.	Costs and expenses incurred in the action.

On the Third Claim for Relief:

1.	Actual damages to be determined by the jury;

2.	Statutory and punitive damages to be determined by the jury;

3.	Attorneys' fees; and

4.	Costs and expenses incurred in the action.

On the Fourth Claim for Relief:

1.	Actual damages to be determined by the jury;

2.	Statutory and punitive damages to be determined by the jury;

3.	Attorneys' fees; and

4.	Costs and expenses incurred in the action.

Respectfully submitted,

/s/ Micah S. Adkins
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
301 19th Street North, Suite 581
The Kress Building
Birmingham, AL  35203
Telephone:  (205) 458-1202
Facsimile:   (205) 208-9632
Email: MicahAdkins@ItsYourCreditReport.com
*Attorney for Plaintiff*